Aleksandr A. Volkov (SBN 277850)
VOLKOV LAW FIRM, INC.
675 Ygnacio Valley Road, Suite B209
Walnut Creek, CA 94596
Tel. (415) 987-7000
Fax (415) 276-6376
*alex@volf.com*

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

CENTAL DISTRICT OF CALIFORNIA

WESTERN DIVISION / LOS ANGELES COUNTY

| | |
|---|---|
| OKSANA KIRITCHENKO, PETER KIRITCHENKO,<br><br>Plaintiffs,<br><br>vs.<br><br>JETBLUE AIRWAYS CORPORATION, and DOEs 1 through 10, inclusive,<br><br>Defendants | CASE No. 2:24-cv-6075<br><br>COMPLAINT FOR DAMAGES<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs OKSANA KIRITCHENKO and PETER KIRITCHENKO complain of Defendants JETBLUE AIRWAYS CORPORATION and DOE defendants 1 through 10, inclusively, as follows:

**JURISDICTION**

1. This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332(a)(1), 1367, and 42 USC §3613.  The amount in controversy exceeds $75,000.00.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3).  Plaintiffs purchased their round trip airline tickets from Defendant JETBLUE AIRWAYS CORPORATION ("JetBlue") in Los Angeles County, California, and Plaintiffs' flight with JetBlue originated and ended at Los Angeles, California.

3. This Court has personal jurisdiction over the parties as all Defendants engage in business within the State of California and the Central District and thus have sufficient contacts and the claims

are related to Defendants' activities or contacts in California.

4. Jurisdiction of this Court for the state claims made herein is authorized by Federal Rule of Civil Procedure 18(a).

## PARTIES

5. Plaintiffs are competent individuals over 18 years old and are the residents of Los Angeles County, State of California.

6. Defendant JetBlue is a Delaware corporation, with its principal place of business in New York, domesticated in California as a foreign corporation (entity's registration number with the California Secretary of State is 2255572). JetBlue is a common carrier, a commercial airline company operating flights within and outside of California.

7. Defendants, and each of them, regularly engage in business in the State of California and regularly provide airline carrier services and related services to residents in the State of California for travel within and outside the State of California.

8. The true names and capacities of defendants sued as DOEs are unknown to Plaintiffs. Plaintiffs will amend this complaint to allege the true names and capacities of the fictitiously named defendants when ascertained.  Plaintiffs are informed, believe, and thereon allege that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged at all times relevant to this complaint, and that the damages done to Plaintiffs as herein alleged were proximately caused by the aforementioned defendants.  Each reference in this Complaint to "defendant," "defendants," or a specifically named defendant refers also to all defendants sued under fictitious names.

9. Plaintiffs are informed, believe, and thereon allege that each defendant herein, including DOEs 1–10, is the principal, agent, employer, employee, or representative of each of the other co-defendants, and in doing the things hereinafter alleged was acting within the course, scope, and purpose of such agency or employment, and with the permission of his/her co-defendants, and that said defendants, and each of them, assisted, cooperated, coordinated, ratified, and acted in concert with each of the other defendants, and is therefore responsible in some manner for the occurrences herein alleged, except where specifically alleged to the contrary.  The acts and omissions of each such defendant

concurred with and contributed to the acts and omissions of the other defendants, and each of them, in proximately causing the damages to Plaintiffs as herein alleged.

## COMMON ALLEGATIONS OF THE COMPLAINT

10. Jetblue is a common carrier that provides commercial service by air on a nationwide basis, including the flight to and from the state of California.

11. Plaintiffs bring this action against Defendants for personal injuries resulting from the Defendants' negligent conduct during the pre-boarding and boarding for the flight No. 2501, at Fort Lauderdale-Hollywood International Airport ("FLL"), located in the city of Fort Lauderdale, Florida. The capacity of the plane for this flight exceed 19 passengers.

12. Plaintiffs purchased two round-trip first-class tickets to travel on JetBlue from Los Angeles, California to Fort Lauderdale (on September 2, 2023), Florida and back on September 13, 2023. For this trip, Plaintiffs purchased 1st class tickets, paying a total of $4,295.60.

13. Plaintiffs were accompanied on their trip by their small dog, their emotional support animal, a French Bulldog named Pier, weighting 23 lbs. Prior to the flight, Plaintiffs had purchased and already successfully used for the air travel, a bag to transport Pier, and had submitted the "U.S. Department of Transportation Service Animal Air Transportation Form" to JetBlue about Pier, listing his veterinarian, trainer, and vaccination information.

14. The flight to Florida went without incident, both Plaintiffs traveling in the 1st-class seats and with their dog. Plaintiffs were expecting to have a similar experience for their flight back, but it did not happen.

15. On the pre-boarding check for the returning flight, Plaintiffs were initially questioned on whether they could be allowed to bring their dog with them. The preboarding agent for Jetblue kept Plaintiffs standing at the kiosk for a very long time, without addressing their dog-related request, and not letting them to sit down to wait that time without standing.

16. Plaintiff PETER KIRITCHENKO was at that time 71 years old, and has a sever disability affecting his ability to stand; he has several staple implants in his spine. Plaintiff OKSANA KIRITCHENKO is a Stage-4 cancer patient. Plaintiffs were offering the Jetblue agent the documents reflecting their disability, but their requests were ignored. Jetblue agents did not offer them a

wheelchair, and the plaintiffs were afraid to step aside without an acknowledged arrangement that they will be called back for the dog-related inquiry, in a fear that they will lose their spot in the queue.

17. After a long wait that was causing Mr. Kiritchenko severe pain due to the prolonged standing and to both plaintiffs the stress of facing the perspective of being denied their flight, Jebtlue agent told them that the only scenario they would be allowed on the plane will require one of the plaintiffs to give away the right to flying 1st class and flying in the economy class with the dog. Plaintiffs had a pressing need to get back home (Mrs. Kiritchenko being a cancer patient had to be locally available in Los Angeles for her checkups), so they agreed.

18. Plaintiffs were boarded on the plane with Mr. Kiritchenko seated in the 1st class seat and Mrs. Kiritchenko seated in the economy class with their dog in its travel bag. As the plane was already taxing out away for taking off, a Jetblue flight assistant came up to Mrs. Kiritchenko and demanded that the dog be relocated to a much smaller bag that the assistant brought with her.

19. The dog did not fit into the offered bag and Mrs. Kiritchenko informed the flight assistant about it. The assistant issued an ultimatum that either the dog be placed into the provided bag, or the plaintiffs shall leave the plane. As the dog was unable to fit, the plane was ordered to return to the airport building and the plaintiffs were ousted from the plane.

20. At that late time of the evening, there were no other flights available for the plaintiffs to take. The soonest flight they were able to book was a flight with the Delta Airlines taking off the next day, from the Miami airport. Delta Airlines had no issues with either the plaintiffs' dog, or the dog's bag, and the plaintiffs returned home one day later by taking the Delta Airlines flight.

21. The events described above causes the plaintiffs the otherwise unnecessary monetary damages, such as the cost of the Jetblue flight they were unable to use, the costs of the overnight hotel and travel to Miami to get to their Delta flight, and the cost of the Delta Airlines' airfare.

22. More significantly, the acts and omissions to act by the defendants caused the plaintiffs serious personal injury and emotional distress. Both plaintiffs were subjected to an unexplainable level of cruel humiliation and ridicule. Additionally, Mr. Kiritchenko had experienced a prolonged period of pain in his spine and limited mobility following his forced extended standing at the Jetblue kiosk. Mrs. Kiritchenko, although a Stage-4 cancer patient, had been in remission prior the events described

hereinabove. Those events caused Mrs. Kiritchenko an extreme amount of stress. Upon arrival home, she checked in to Cedars-Sinai Medical Center hospital in Los Angeles. The test results had shown the mean tumor molecules levers ("MTM/ml") had risen to 0.59. Several prior tests were showing test results at 0.00.

## CLAIMS FOR RELIEF

### First Cause of Action – Negligence

### (Against All Defendants)

23. Plaintiffs reallege and incorporate herein by reference the allegations stated in paragraphs 1 through 22, inclusive, as pleaded in this claim.

24. Defendants, and each of them, had a duty to Plaintiffs as fare-paying passengers in operation of the JetBlue flight, and in conducting its boarding and preboarding operations.

25. The duty includes, without limitation, Defendants' compliance with the Air Carrier Access Act ("ACAA"; incl. 49 U.S.C. § 41705), as promulgated by the applicable regulations. (14 C.F.R. Part 382.) Private defendants may invoke the standard of duty under ACAA in bringing forth a negligence claim. (*Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1007 (9th Cir. 2013); *Haxton v. American Airlines, Inc.* (C.D. Cal., June 18, 2019, No. 218CV10287RGKPLA) 2019 WL 4284513, at *2.)

26. The-above mentioned duty of the airline carrier under the ACAA and its applicable regulations (49 U.S.C. § 41705; 14 C.F.R. Part 382) includes:

- not to discriminate against an individual with disability, by reason of such disability, in the provision of air transportation (14 C.F.R. § 382.11);
- not to exclude a disabled individual from, or deny her/him from the air transportation or related services that are available to other persons (*Id.*);
- not to refuse the provision of air transportation because an individual asserts the rights protected by the ACAA and its regulations (*Id.*), which assertion of rights may not be required to be accommodated by a presentation of a medical certificate (14 C.F.R. § 382.23), or by a presentation of any animal-related documentation beyond the provided forms (14 C.F.R. § 382.75);

- to modify the policies, practices, and facilities when needed to provide nondiscriminatory service to a particular individual with a disability (14 C.F.R. § 382.13);
- in exercising the carrier's authority, not to act inconsistently (14 C.F.R. § 382.19);
- not to deny a service animal to accompany a passenger with disability based on the animal's breed, type, "or on the basis that its carriage may offend or annoy carrier personnel or persons traveling on the aircraft" (14 C.F.R. § 382.72);
- not to impose additional check-in requirements, such as the requirement of a physical check-in at the airport "on the basis that the passenger is traveling with a service animal" (14 C.F.R. § 382.76);
- to permit "a service animal to accompany a passenger with a disability on the passenger's lap or in the passenger's foot space" unless such placement would be inconsistent with the FAA requirements or encroach into other passenger's space, and, in the event of such encroachment, to offer "to move with the animal to another seat location within the same class of service" (14 C.F.R. § 382.77);
- not to refuse the transportation to the disabled passengers traveling with a service animal, unless the safety or health requirements, or the passengers did not complete the requested form (14 C.F.R. § 382.79);
- not to impose own or additional restrictions on the transport of service animals (14 C.F.R. § 382.80);
- to offer the same standard of accommodation at the boarding (14 C.F.R. § 382.91), and to promptly provide the assistance in enplaning and deplaning (14 C.F.R. § 382.95);
- to train its personnel who deals with the traveling traffic for compliance of the above-mentioned duties (14 C.F.R. § 382.141).

27. Defendants breached its duty to Plaintiffs. Defendants refused the air transportation service to Plaintiffs on the grounds of denying access to the plane for their service animal to travel with them, while imposing the requirements that are not consistent with the ACAA, failed to modify their policies and provide reasonable accommodation for Plaintiffs, and executing their refusal of service inconsistently and only on the second flight back to Los Angeles.

28. As a direct and proximate result of Defendants' breach of their duty to Plaintiffs, Plaintiffs were injured and sustained damages. Plaintiff were gravely hurt and injured in their health, strength, and activity, sustaining injury to their immune and nervous systems, and persons, all of which injuries have caused, and continue to cause Plaintiffs great mental, physical and nervous pain and suffering. As a result of such injuries, Plaintiffs have suffered general damages in an amounts according to proof at trial, in excess of the jurisdictional maximum of this court. Plaintiffs also suffered emotional distress, including but not limited to stress, anxiety, loss of sleep, loss of appetite, depression, annoyance, embarrassment, and humiliation.

29. Plaintiffs' incurred damages also include the otherwise unnecessary purchase of another set of airline tickets to get home by another airline, the purchase of the hotel stay in order to wait for the new flight, and the loss of the value Plaintiffs paid to JetBlue for their first-class tickets.

30. As a further proximate result of Defendants' acts and omissions to act, and each of them, Plaintiff has incurred, and will continue to incur, medical and related expenses in an amount according to proof at trial.

## Second Cause of Action – Negligence Of Common Carrier

### (Against All Defendants)

31. Plaintiffs reallege and incorporate herein by reference the allegations stated in paragraphs 1 through 30, inclusive, as pleaded in this claim.

32. Defendants were at all relevant times engaged in the business of operating an airline business and service for profit, and maintained a regular place of business for the purpose of transporting members of the general public by way of aircraft, such that Defendants were "common carriers" pursuant to California Civil Code section 2100. Defendants advertised their services to the general public and charged fees for their services.

33. At all times mentioned herein, Defendants were operating, controlling, and managing the boarding, enplaning, and deplaning of the aircraft at FLL airport in Fort Lauderdale, Florida, for JetBlue's flight No. 2501 to Los Angeles.

34. As a common carrier, Defendants owed a duty to all individuals who purchased the tickets to board JetBlue's flight No. 2501, that Defendants will use and exercise the utmost care and

diligence to avoid harm to their passengers, including Plaintiffs.

35. Defendants breached their "common carrier" duties with regard to handling the boarding of Plaintiffs on flight No. 2501, as more particularly pleaded above, and negligently violated the operative procedures and requirements in handling Plaintiffs' boarding to proceed on the flight accompanied by their dog.

36. As the result of Defendants' breach of their duty, Plaintiffs were injured and incurred damages, as pleaded in Paragraphs 28–30, above.

### Third Cause of Action – Americans with Disabilities Act, 42 USC 12101, *et seq.*
### (Against All Defendants)

37. Plaintiffs reallege and incorporate herein by reference the allegations stated in paragraphs 1 through 36, inclusive, as pleaded in this claim.

38. Defendants failed to provide reasonable accommodation to Plaintiffs and did so in violation of the Americans with Disabilities Act ("ADA"), by discriminating Plaintiffs on the grounds of their disability needs and failing to provide a reasonable accommodation.

39. Subject to the provisions of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC § 12132.

40. Courts analyze "claims under the ADA and § 504 of the Rehabilitation Act together, because there is no significant difference in the analysis of rights and obligations created by the two Acts. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999). Like under the Rehabilitation Act, the standard of deliberate indifference applies here. *Miller v. Monroe Sch. Dist.*, 2016 U.S. Dist. LEXIS 13116, *23 (W.D. Wash. Feb. 3, 2016).

41. "A failure to provide reasonable accommodation can constitute discrimination under section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service,

program, or activity." *Vinson, Id.*, citing 28 C.F.R. 35.130(b)(7).

42. Here, Plaintiffs were excluded from participation in and denied the benefits of the program of the air travel by Defendants and were subject to discrimination by them. The grounds and elements for this claim are alleged above, particularly including and incorporating by reference the allegations concerning Defendants' denial to accommodate Plaintiffs to complete their travel back home with their dog. Plaintiffs' federally protected right to be accompanied on the flight with their service animal was violated by Defendants, and the violation was made knowingly, since (1) Plaintiffs made their need known to Defendants by requesting the accommodation, and (2) Defendants had already in the past allowed Plaintiffs to travel with that very animal in that very travel bag, on the flight from California to Florida.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury in this action. (FRCP rule 38; LR rule 38–1.)

Date:   July 19, 2024

ALEKSANDR A VOLKOV
Attorney for Plaintiffs

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows on all claims for relief, jointly and severally against each Defendant:

**A**. For special, economic damages, including hospital and medical expenses, according to proof;

**B**. For general damages for pain and suffering, anxiety, emotional stress, inconvenience and discomfort, according to proof;

**C**. For compensatory and statutory damages, attorneys' fees and costs according to proof at trial;

**D**. For reasonable attorneys' fees, incurred by Plaintiffs;

**E**. For interest on the adjudged sum of compensatory damages, in an amount according to proof at time of trial;

**F**. For costs of suit incurred herein; and

**G.** For such other and further relief as the court deems just and proper.

Respectfully submitted,

Date:   Date:   July 19, 2024

_____
ALEKSANDR A VOLKOV
Attorney for Plaintiffs